THE STATE, EX REL. WATSON, *v.* INDUSTRIAL COMMISSION OF OHIO ET AL.

(No. 85AP-160 — Decided May 6, 1986.)

*French & French* and *James H. French,* for relator.

*Anthony J. Celebrezze, Jr.,* attorney general, and *John C. Vanik,* for respondent Industrial Commission of Ohio.

*Roderick, Myers & Linton, Lawrence Bach* and *Robert F. Linton,* for respondent Ohio Edison Company.

MOYER, P.J. Relator, Patricia A. Watson, has filed an original action requesting this court to issue a writ of mandamus ordering respondent, Industrial Commission of Ohio, to vacate an order denying relator's application for an additional award benefit for violation of a specific safety requirement by respondent-employer, the Ohio Edison Company, and to order the Industrial Commission to find that Ohio Edison violated a specific safety requirement resulting in the death of relator's spouse.

The matter was referred to a referee pursuant to Civ. R. 53 and the referee has filed his report containing findings of fact, conclusions of law, and his recommendation.

The referee recommends that the request for a writ of mandamus be granted for the purpose of conducting "* * * further proceedings to consider whether respondent-employer provided adequate protective equipment to decedent in accordance with the specific requirements of Ohio Adm. Code 4121: 1-19-02 and, if not, whether the failure to provide said protective equipment caused decedent's injuries of record resulting in his death."

Ohio Edison has filed an objection to the referee's report, arguing the referee's recommendation should not be adopted.

Upon our review of the record, the report of the referee, and the arguments of counsel, we sustain the objection, reject the recommendation of the referee, and deny the writ of mandamus for the reasons set forth below.

The findings of fact of the referee are adopted and are summarized as follows: Relator is the widow-claimant of Daniel O. Watson, who was injured on October 3, 1980 during the course of and arising out of his employment with respondent, Ohio Edison, when, while cleaning and lubricating a transfer air brake switch, he walked into an energized area. Following a job-safety meeting, Daniel Watson and co-workers climbed forty feet up a ladder onto a frame from which they were to perform maintenance duties on a de-energized air brake switch. The de-energized switch and another energized switch were twenty-four feet apart on the frame. The ladder was placed midway between them, leaving twelve feet on one side to the de-energized switch, and twelve feet on the other side to the energized switch. For reasons unknown, Daniel Watson approached the energized switch and was badly burned by electrical shock. Daniel Watson's injuries ultimately resulted in his death on October 31, 1980.

Relator's death claim was allowed by a district hearing officer and relator later filed an application for an additional award for violation of a specific safety requirement alleging that Ohio Edison violated Ohio Adm. Code 4121: 1-19-01(A) and (B)(1) to (117), and Ohio Adm. Code 4121:1-19-02(A) to (K).

Relator's application was heard by a staff hearing officer, who issued an order on April 11, 1984, denying the application and stating, in pertinent part:

"The evidence indicates that decedent was working on a steel beam and approached too closely to the energized jaw side of a transfer switch. It is not clear whether decedent actually touched the jaw or whether the electricity transferred by arc. * * *

"* * * [T]he jaw side of the switch carried in excess of 80,000 volts to ground or 138,000 volts phase to phase. This is found to be such an enormous

amount of current as to render 'protective clothing' a moot point.

"* * *

"It is the decision of the hearing officer to deny the application of widow-claimant filed 11-2-81 in its entirety."

Relator filed the instant action contending that the Industrial Commission abused its discretion by failing to find that Ohio Edison had violated a specific safety requirement resulting in the death of relator's spouse. The parties have stipulated the Industrial Commission claim file as the evidence to be considered in this case.

Relator's claim focuses upon two safety requirements found in Ohio Adm. Code 4121:1-19-02(J)(1)(a) and (K), relating to the "installation and maintenance of electric supply lines and/or the transmission and distribution of electric power in such lines" (Ohio Adm. Code 4121:1-19-01[A]), which state, in pertinent part:

"(J) Protective Devices (Equipment).

"(1) Rubber or Plastic Line Hose, Line Guards, Insulated Hoods, Blankets and Similar Protective Equipment.

"(a) The employer shall provide rubber or plastic line hose, line guards, insulator hoods, blankets and similar protective equipment when employees are working on, or within contact distance of energized lines.

"* * *

"(K) Barriers and Warning Devices. The employer shall provide barriers and effective warning devices such as flasher lights, 'MEN WORKING' signs, cones, flares, lanterns, flags and reflectors, for the protection of employees when work is performed in congested areas *and* where employees are exposed to traffic hazards *or* other working conditions where a hazard may exist." (Emphasis added.)

Addressing Ohio Adm. Code 4121:1-19-02(J)(1)(a), the staff hearing officer stated in her order of April 11, 1984 that the voltage in the jaw side of the switch "* * * is found to be such an enormous amount of current as to render 'protective clothing' a moot point."

The referee found no evidence in the record supporting this conclusion of the hearing officer. The referee found, therefore, that the staff hearing officer abused her discretion by failing to consider whether protective equipment, which was provided to the decedent (hard hat, shoes, and gloves), met the safety requirement, or whether additional protective equipment should have been provided to decedent in light of his working in close proximity to an energized switch.

Ohio Edison argues in its objection that the issue of protective clothing was not raised in relator's brief before this court and was, therefore, waived as a possible basis for the requested writ of mandamus. Ohio Edison further contends that all appropriate protective equipment was provided the decedent; that he was not working *on* or *within contact distance*[1] of energized lines, his work station at the de-energized switch being twenty-four feet away from the energized switch and his closest approach to the energized switch upon ascending the ladder being twelve feet; and that, therefore, by applying the code to the facts, Ohio Adm. Code 4121:1-19-02(J)(1)(a) is, by its own terms, inapplicable. Finally, Ohio Edison argues that the relator failed to carry her burden of proving that there was a violation of a specific safety requirement and that the injuries were proximately caused by the violation.

The status of the record before us supports the determination that Ohio Edison has not violated specific safety

---

[1] "Contact distance" is defined in Ohio Adm. Code 4121:1-19-01(B)(16) as "* * * that distance within which contact in doing the work or contact in the event of reaching, slipping or falling may possibly occur."

requirements of Ohio Adm. Code 4121:1-19-02(J)(1)(a). The evidence in the claim file clearly shows that Daniel Watson was not assigned to work on energized lines and that he was issued appropriate protective clothing for the job assigned. The record contains no evidence or finding that the decedent was assigned to work within "contact distance" of the energized switch. The relator presented no evidence that any protective clothing would have prevented the injuries sustained by the decedent, and while relator had the opportunity to file additional evidence within thirty days within receipt of the Industrial Commission's investigative report and to request a record hearing, she did neither. See Ohio Adm. Code 4121-3-20.

Recovery of an award for violation of a specific safety requirement is predicated upon proof of a violation and a causal connection between the violation and injury. Section 35, Article II, Ohio Constitution; *State, ex rel. Haines,* v. *Indus. Comm.* (1972), 29 Ohio St. 2d 15 [58 O.O.2d 70]; *State, ex rel. A-F Industries,* v. *Indus. Comm.* (Oct. 3, 1985), Franklin App. No. 84AP-848, unreported, affirmed (1986), 26 Ohio St. 3d 136. The claimant has failed to satisfy her burden of proving that there was a violation of a specific safety requirement proximately causing the decedent's injuries.

The record does not provide evidence in support of the hearing officer's conclusion that the issue of protective clothing is moot due to the high level of voltage involved. However, the burden was upon the relator to prove the violation of a specific safety requirement and the evidence does not indicate that she did so. It was relator's burden to offer evidence that protective clothing would have prevented decedent's death. Thus, relator has no clear legal right to relief.

Addressing the second claimed violation, the staff hearing officer found that, under Ohio Adm. Code 4121:1-19-02(K), barriers and warning devices were not needed because there was no "traffic hazard" on the steel beam and because there was no evidence that the area was "congested." The referee also correctly found that there is no evidence that the area in question was congested.

We concur in part with the referee's interpretation of the language in Ohio Adm. Code 4121:1-19-02(K) as follows:

"* * * In order for the barrier and warning device provisions of the aforementioned safety requirement to be considered, it is necessary for a claimant to prove one set of two possible combinations with a common denominator involving a fact that the work in question was being performed in a congested area. In order for relator to utilize this particular safety requirement as the basis for an alleged violation, relator must show that decedent was working in a congested area and was either exposed to traffic hazards or to other working conditions where a hazard may exist. It is not sufficient that decedent was exposed to conditions where a hazard might exist if he was not working in a congested area."

The determination that the work was not performed in a congested area precludes a finding that the employer was obligated to satisfy specific safety requirements under Ohio Adm. Code 4121:1-19-02(K). Thus, relator cannot show a clear legal right to relief.

The hearing officer also found that the last phrase of Ohio Adm. Code 4121:1-19-02(K), "other working conditions where a hazard may exist," is "* * * 1) not a specific [safety] requirement and 2) if it were a specific requirement, employer had no reason to expect decedent to approach the energized circuits." Because Ohio Adm. Code 4121:1-19-02 (K) is inapplicable here, this finding becomes dicta.

The referee nevertheless recommends that the last clause of Ohio Adm. Code 4121:1-19-02(K), "* * * other working conditions where a hazard may

358

exist," is a specific safety requirement. We do not agree. This last clause of Ohio Adm. Code 4121:1-19-02(K) does not create a specific safety requirement. The language is too vague to put an employer on notice of what he is required to do to avoid being subjected to a penalty. An award for violation of a specific safety requirement is deemed a penalty to the employer subject to the rule of strict construction with all reasonable doubts concerning the interpretation of the safety standard to be construed against the applicability of the standard to the employer. *State, ex rel. Swearingen, v. Indus. Comm.* (Feb. 11, 1982), Franklin App. No. 81AP-792, unreported; *State, ex rel. Sanchez, v. Indus. Comm.* (May 8, 1984), Franklin App. No. 83AP-1050, unreported, affirmed (1985), 18 Ohio St. 3d 46.

The burden is upon the relator to prove the violation of a specific safety requirement and a causal relation between the violation and the injury. The evidence does not indicate that she did so. There being no clear legal right to relief, the objection is sustained and the requested writ of mandamus is denied.

*Objections sustained.*
*Writ of mandamus denied.*

REILLY and McCORMAC, JJ., concur.